IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALBERT KEYES, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | |
| § | |
| WELLS FARGO BANK, N.A., PHH § | No. 3:20-cv-633-G-BN |
| MORTGAGE CORPORATION, § | |
| OCWEN LOAN SERVICING, LLC, § | |
| POWER DEFAULT SERVICES, INC., § | |
| and AVT TITLE SERVICES, LLC, § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Senior United States District Judge A. Joe Fish. *See* Dkt. No. 3.

Defendants Wells Fargo Bank, N.A. ("Wells Fargo), PHH Mortgage Corporation ("PHH"), and Power Default Services, Inc. ("PDS") have filed a Motion for Summary Judgment on all claims brought by Plaintiff Albert Keyes. *See* Dkt. No. 34. The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant Defendants' motion for summary judgment.

## Background

The following facts come from the summary judgment record and are either undisputed or set forth in the light most favorable to Keyes as the non-movant plaintiff.

This case concerns alleged misconduct related to the financed purchase and attempted foreclosure of Plaintiff Albert Keyes's home in Dallas, Texas ("the Property"). *See* Dkt. No. 1-4, Ex. D. Keyes originally purchased the Property on August 23, 2006, financing the loan by executing two notes – one for $108,000 secured by a Deed of Trust ("first lien") and the second for $27,000 secured by a Purchase Money Deed of Trust ("second lien") – both payable to Option One Mortgage Corporation. *See id.*

A series of bankruptcies and loan entity changes followed. Servicing of Keyes's loan was transferred to American Home Mortgage Servicing, Inc. which later became Homeward Residential, Inc. *See id*. In June 2006, Keyes filed for Chapter 13 bankruptcy relief, which was successfully discharged in September 2014. *See id*. Meanwhile, servicing of the loan was transferred to Ocwen in March 2013. In 2014, Ocwen informed Keyes that he owed approximately $13,000. *See id*. Keyes alleges that, despite paying Homeward approximately $25,000 over the course of his bankruptcy proceedings, Homeward failed to apply/forward or Ocwen failed to manage and apply those payments. *See id.*

Ocwen then posted Keyes's loan for foreclosure, prompting Keyes to file another bankruptcy, which he then voluntarily dismissed after executing a loan modification offer from Ocwen. *See id*.

Prior to beginning his modified payments, the servicing of Keyes's loan was again transferred, this time to PHH. *See id*. But Keyes alleges that PHH would not accept payments from him and instead sent Keyes a notice of acceleration claiming

that his mortgage was past due and he owed $5,000. *See id*. Keyes disputed this amount and, on September 23 and October 3, 2017, sent letters to PHH and Ocwen disputing the charges and inquiring about the loan modification and trustee payments Ocwen received from his second bankruptcy payments. *See id*.

Keyes's home was posted for foreclosure sale in November 2017. *See id*. In October, Keyes refiled for bankruptcy relief, and his bankruptcy was dismissed in August of 2018. *See id*. He again filed for bankruptcy in September 2019 and dismissed in December 2019. PHH then reposted the Property for foreclosure sale on March 3, 2020. *See id*.

Keyes filed this lawsuit in state court on March 2, 2020, seeking injunctive relief to prevent the foreclosure sale, and asserting claims for violations of the Real Estate Settlement Procedures Act ("RESPA"); the Texas Debt Collection Practices Act ("TDCPA"); and for breach of contract. *See* Dkt. No. 1-4, Ex. D. The state court issued a Temporary Restraining Order precluding the scheduled foreclosure sale. *See* Dkt. 1. Defendants promptly removed the case the federal court on the basis of federal question and diversity jurisdiction. *See id*.

On March 12, 2021, Defendants filed this Motion for Summary Judgement. *See* Dkt. No. 34. Keyes did not respond. *See* Dkt. No. 43.

The undersigned now recommends that the Court grant Defendants' motion.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the

nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [his or their] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015)

(internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little,* 37 F.3d at 1075; *accord Pioneer Expl.,* 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor,* 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. Nations Credit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

Keyes has not responded to Defendants' summary judgment motion. Keyes's failure to respond does not permit the Court to enter a "default" summary judgment. *See Johnson v. Herzog Transit Servs., Inc.*, No. 3:11-cv-803-D, 2013 WL 164222, at *1 (N.D. Tex. Jan.15, 2013); *see also Settlement Capital Corp., Inc. v. Pagan*, 649 F. Supp. 2d 545, 553 (N.D. Tex. 2009) ("Summary judgment may not be awarded by default merely because the nonmoving party has failed to respond. A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule." (footnotes omitted)). But the Court is permitted to accept Defendants' evidence as undisputed. *See Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990). And Keyes's failure to respond means that he has not designated specific facts showing that there is a genuine issue for trial on any of their claims. "A summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).

## Analysis

### I. Keyes's RESPA Claim

In his first claim, Keyes contends that Ocwen and PHH violated 12 C.F.R. § 1024.41 by (1) failing to consider Keyes's executed loan modification after his second bankruptcy and by (2) failing to communicate with Keyes regarding his loan modification. Keyes further argues that (3) Ocwen failed to do its due diligence as transferee servicer under RESPA by not applying the $25,000 that Keyes paid

through the bankruptcy trustee to his loan after the servicing transfer from Homeward to Ocwen. Finally, Keyes alleges that (4) PHH failed its duty as a transferee servicer by failing to acknowledge his loan modification with Ocwen and correct the unapplied payments during Keyes's bankruptcy.

In their Motion for Summary Judgment, Defendants argue that they are entitled to dismissal of Keyes's RESPA claim because Keyes failed to allege any actual damages resulting from the alleged RESPA violations.

Under Section 1024.41, "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))." 12 C.F.R. § 1024.41(a). Under 12 U.S.C. § 2605(f), a servicer who fails to comply with the provisions of RESPA shall be liable for an amount equal to the sum of: (a) any actual damages to the borrower as a result of the failure; and (b) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000. *See* 12 U.S.C. § 2605(f)(1).

Under 12 U.S.C. § 2605(f)(1)(A), damages awarded to a borrower must be "as a result of the [lender's] failure" to comply with RESPA. *See* 12 U.S.C. § 2605(f)(1)(A); *see Collier v. Wells Fargo Home Mortg. as Successor in Interest to Norwest & Parker Square Bank*, No. 7:04-cv-086-K, 2006 WL 1464170, at *3 (N.D. Tex. May 26, 2006); *Akintunji v. Chase Home Fin., L.L.C.*, No. Civ. A. H-11-389, 2011 WL 2470709, at *2 (S.D. Tex. June 20, 2011).

Here, Keyes alleges generally that Defendants' actions caused him to suffer loss of creditworthiness and the stigma of foreclosure, mental anguish and acute psychological trauma, and loss of title to his home and equity, and to incur attorney's fees related to this lawsuit.

As an initial matter, the Fifth Circuit has held that attorneys' fees and litigation expenses do not satisfy the actual damages requirement of a RESPA claim. *See Whittier v. Ocwen Loan Servicing, L.L.C.*, 594 F. App'x 833, 836-37 (5th Cir. 2014). Keyes's RESPA claim that he incurred attorneys' fees should not survive summary judgment as proof of actual damages.

With respect to emotional damages, authority within the Fifth Circuit is split on whether a plaintiff may recover under RESPA. *Compare Anderson v. Wells Fargo Bank, N.A.*, No. 3:16-cv-2514-N, 2018 WL 3426269, at *10-*12 (N.D. Tex. July 13, 2018) ("The Court now holds that emotional damages are recoverable under RESPA."); *Geoffrion v. Nationstar Mortg. LLC*, 182 F. Supp. 3d 648, 665 (E.D. Tex. 2016) ("Therefore, ... the Court finds that mental anguish damages are included within RESPA's actual damages provision."); *Madrid v. Wells Fargo Bank, N.A.*, No. EP-14-CV-00152-DCC, 2017 WL 5653906, at *7 (W.D. Tex. Mar. 17, 2017) (holding that mental anguish damages are permitted under RESPA), *with Steele*, 2013 WL 3196544, at *7-8; *Trahan v. GMAC Mortg. Corp.*, No. EP-05-CA-0017-FM, 2006 WL 5249733, at *8 (W.D. Tex. July 21, 2006) ("The statute does not permit mental anguish damages and this court is not at liberty to award damages which are not provided for in the statute."). But Keyes neither alleges facts nor offers evidence

showing that Ocwen's and PHH's alleged RESPA violations proximately caused the "emotional anguish and acute psychological trauma" of which he complains. Without needing to decide that a plaintiff can recover emotional damages under RESPA, the undersigned concludes that Keyes has not proffered sufficient evidence of emotional distress to survive summary judgment.

Likewise, Keyes pleads no factual allegations showing that Ocwen and PHH's alleged failure to consider or communicate with him about his loan modification application negatively affected his creditworthiness, brought on the stigma of foreclosure, or caused him to lose title to his home or equity. Keyes's conclusory statements that Ocwen and PHH caused him damages are, without specific facts showing how actual those damages are attributable to the alleged RESPA violations, insufficient to survive a motion for summary judgment.

Because Keyes has not shown there exists a genuine issue of material fact as to actual damages, Defendants' summary judgment motion should be granted.

## II. Keyes's Breach of Contract Claim

Keyes asserts that Wells Fargo and PHH are liable for breach of contract, premised on two alleged violations of the terms of the Deed of Trust. First, Keyes argues that, "[b]ecause PHH failed to comply with its duty under RESPA as a transferee servicer and because Wells Fargo authorized the Property's foreclosure for March 3, 2020, despite PHH's noncompliance with RESPA, Wells Fargo and PHH breached the Deed of Trust." Dkt. 1-4, Ex. D. Second, Keyes contends that Wells

Fargo and PHH breached the Deed of Trust by issuing a Notice of Sale that failed to comply with the requirements of the Texas Property Code.

While the Fifth Circuit has held that "[f]ederal and state regulations can form the basis of a breach-of-contract claim if the parties expressly incorporate them into their contract," that is not the case here. *Smith v. JPMorgan Chase Bank, N.A.*, 519 F. App'x 861, 864 (5th Cir. 2013). No provision in the Note or Deed of Trust expressly incorporates RESPA's provisions into the contract between Keyes and Option One or any of the subsequent loan servicers.

The only provisions in the Deed of Trust that reference RESPA specifically or federal law generally provide that a "Lender may ... collect and hold Funds in an amount not to exceed" the amount allowed under RESPA and the agreement "shall be governed by federal law and the law of the jurisdiction in which the Property is located." Dkt. No. 1-4, Ex. C ¶¶ 2,15. Keyes has not alleged any violation of the first provision, and the language generally subjecting the agreement to federal and state law does not provide a basis on which to bring a breach of contract claim. *See Smith*, 519 F. App'x at 864 (holding plaintiffs could not base their breach of contract claim on RESPA violations where the deed of trust included only a general provision subjecting the agreement to federal and state law).

And, as discussed above, even if Keyes could premise his claim on RESPA, he has not sufficiently alleged damages resulting from the alleged RESPA violations.

Likewise, Defendants move for summary judgment on Keyes's claim that Wells Fargo and PHH breached the Deed of Trust by failing to strictly comply with the requirements of the Texas Property Code, arguing that Keyes cannot show damages.

Texas Property Code § 51.0075, which governs the rights and duties of loan trustees related to the public sale of property, provides, among other things, that "[t]he name and a street address for a trustee or substitute trustee shall be disclosed on the notice [of sale] required by Section 51.002(b)." Keyes asserts here that the notice of sale included only PDS and AVT's address and therefore did not comply with Section 51.0075(e). But, as this Court already addressed in its order dismissing Keyes's claims against AVT, *see* Dkt. Nos. 23-25, the "Notice of [Substitute] Trustee Sale," which Keyes submitted as evidence in support of his Complaint both names numerous individuals as substitute trustees and includes an address for them.

The fact that the provided address is AVT's does not mean the notice of sale violates statutory requirements. Nothing in the Texas Property Code prohibits a mortgage lender from appointing several potential substitute trustees who share the same mailing address. And so Keyes has not sufficiently alleged that the Notice of Sale does not comply with the requirements of the Texas Property Code.

Keyes also fails to allege how this purported statutory violation constitutes a breach of the terms of the Deed of Trust. And, as Defendants stress in their summary judgment motion, Keyes fails to put forth any factual allegations showing how he has been harmed as a proximate result of this unidentified breach of the Deed of Trust.

The Court should grant Defendants' summary judgment on the breach of contract claim.

## III.    Keyes's TDCA Claim

Finally, Keyes contends that Wells Fargo, PHH, and PDS violated the TDCA by misrepresenting that the Property could be sold at foreclosure sale. Keyes argues that Wells Fargo, PHH, and PDS are debt collectors under the Texas Finance Code and contends that they violated Section 392.301(a)(8), which prohibits "using threats, coercion, or attempts to coerce that employ ... threatening to take an action prohibited by law," by noticing the Property for foreclosure sale absent a valid contractual right to foreclose.

Keyes is correct that the TDCA prohibits a debt collector from threatening to take an action that is prohibited by law. But the TDCA also provides that "a debt collector is not prohibited from 'exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings.'" *Byrd v. Lakeview Loan Servicing, L.L.C.*, 855 F. App'x 187, 191 (quoting TEX. FIN. CODE § 392.301(b)(3)).

Keyes argues that Defendants threatened an action prohibited by law when they noticed the Property for foreclosure sale, because they did not strictly follow RESPA and the Texas Property Code when issuing the Notice of Sale and thus did not have the right to foreclose.

The Fifth Circuit has held that, "'irrespective of any statutory notice requirements,' the threat to foreclose does not violate the TDCA so long as the debt

-14-

collector has not 'waived its contractual right to foreclose.'" *Id.* (quoting *Rucker v. Bank of America*, 806 F.3d 828 (5th Cir. 2015). In other words, "so long as such a 'contractual right' has not been waived, the TDCA is not violated by failing to comply with relevant notice requirements in attempting to exercise the right." *Id.* at 191-92.

As noted above, Keyes does not allege facts showing that any of the defendants breached the terms of the Deed of Trust or waived the contractual right to foreclose. Keyes's factual allegations address only RESPA and Texas Property Code violations, which, as already discussed, are insufficient to survive summary judgment – and Keyes does not allege how those alleged violations breached the Deed of Trust.

Additionally, and as Defendants argue in their Motion for Summary Judgment, Keyes's claim fails because he does not plead facts sufficiently showing actual damages. As the foreclosure sale did not take place and Keyes remains in possession of the Property, the obvious source of potential TDCA damages is absent here.

Keyes claims that he has "suffered sleepless nights, loss of appetite, fatigue, lack of concentration, severe anxiety, humiliation, despair and indignation as well as headaches, stomachaches, neck aches, backaches, and other chronic types pain" as a result of Defendants' alleged TDCA violations. Dkt. 1-4, Ex. D, at 56. But mental anguish damages require "direct evidence of the nature, duration, and severity of the mental anguish, thus establishing a substantial disruption in the Plaintiff's daily routine." *Reyelts v. Cross*, 968 F. Supp. 2d, 835,846 (N.D. Tex. 2013), *aff'd*, 566 F. App'x 316 (5th Cir. 2014). Keyes offers no such direct evidence of the duration, severity, or disruption caused by these conditions in his Complaint and, where he

failed to respond to Defendants' motion, offered the Court no evidence to the contrary that would indicate an issue of material fact remains.

As such, Keyes has not sufficiently stated facts establishing damages for a TDCA claim. And the Court should grant Defendants' summary judgment on the TDCA claim.

## Recommendation

The Court should grant Defendants' Motion for Summary Judgment [Dkt. No. 34] and dismiss Keyes's claims against remaining defendants Wells Fargo, PHH, and PDS.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 8, 2021

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE